UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-60308-CIV-MARRA/BRANNON

ENRIQUE LINARES,

Plaintiff,

vs.

THE HOME DEPOT, U.S.A., INC.,

Defendant.

_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendant's Motion for Summary Judgment (DE 44) and Plaintiff's Motion for Oral Argument (DE 53).  The Court has carefully considered the Motion and is otherwise fully advised in the premises.

I.  Background

The facts, as culled from affidavits, exhibits, depositions, answers, answers to interrogatories and reasonably inferred therefrom, in the light most favorable to the non-moving party, are as follows:

This action stems from an incident occurring on January 28, 2011 at a Home Depot store located at 11001 Pines Boulevard in Pembroke Pines, Florida.   (Compl. ¶ 4, DE 5-3.)

Plaintiff Enrique Linares ("Plaintiff") and Ramon Clemente went to Home Depot to purchase materials to insulate a shed in Plaintiff's backyard. (Pl. Dep. 41-43, DE 45-6; Clemente Dep. 18, DE 45-7.)  Once inside, Plaintiff obtained a flat cart and put 4 to 6 sheets of insulation on the cart.  He also added wooden sticks and screws. (Pl. Dep. 47-51.)   As Plaintiff pulled the cart, he became unsteady, tried to balance himself, when he suddenly heard both knees pop. (Pl

Dep. 47-57.)

At the time of the fall, Mr. Clemente was outside in the parking lot.  Plaintiff called him and told him that he fell.  Mr. Clemente went inside and saw Plaintiff lying on the floor.  An employee of Home Depot sat Plaintiff up and asked Mr. Clemente to sign the customer incident report. (Clemente Dep. 27-29.)  The report, which was completed by Home Depot, stated the following: "Pulling flat cart and both legs gave out and fell down (both knees gave out) (no chest pain or didn't pass out)." (Incident Report, DE 45-1.)[1]  Plaintiff told Mr. Clemente that he "fell"and later, after being seen at the hospital, Plaintiff said that he "slipped."[2]  (Clemente Dep. 39, 55-56.) Plaintiff told employees at Home Depot that he fell. (Pl. Dep. 62.)  He also may have told them that his legs gave out. (Pl. Dep. 65, 87.)  While at the hospital, Mr. Clemente took a picture of Plaintiff's shoes and his jacket, which had dirt and debris on them. (Clemente Dep. 36-40.)

Barbara Glaid, a Home Depot employee who responded to the scene, testified that she saw nothing on the floor when she arrived, but she did not touch the floor. (Glaid Dep. 33-34, 50, DE 49-2.)  She also stated that Plaintiff motioned to his knees. (Glaid Dep. 27.).  Home Depot sweeps the floors "all day," but only when employees see something on the ground. (Glaid Dep.

───────────

[1] Defendant seeks to rely on medical records and fire rescue reports to which Plaintiff objects on various evidentiary grounds.  Consideration of these documents, however, does not eliminate the genuine issues of material fact that exist in this case. Therefore, it is unnecessaryfor the Court to consider them.

[2] Plaintiff testified that he told fire rescue that he slipped but he also testified that he was not sure if he used the word slipped. (Pl. Dep. 86-87).  Defendant points to statements in the record to support the contention that Plaintiff did not say he slipped; he said his knees gave out. There is, however, conflicting testimony on this point and the Court cannot make a determination as a matter of law.

34.)  She has never seen shavings from insulation on the ground.[3]  (Glaid Dep. 40.)  The store

manager, Osvaldo Ibarra, stated that he arrived at the scene after Plaintiff fell and was told

Plaintiff stated that his legs gave out while he was pulling a cart and he had fallen to the floor.

(Ibarra Aff. ¶ 7, DE 45-1.)  Before leaving the area, he noticed that the floor was clean and dry.

(Ibarra Aff. ¶ 7.)

Right after the fall, Plaintiff was in pain and was not able to answer a lot of questions.

(Pl. Dep. 61-63.)  Plaintiff told fire rescue that his knees gave out and that he fell. (Pl. Dep. 87.)

Plaintiff also testified that he told the hospital staff that he was pulling a cart and his knees gave

out. (Pl. Dep. 87.)  Immediately after his fall, Plaintiff testified that a Home Depot manager told

an employee to clean the floor right now. (Pl. Dep. 60.)  Neither Plaintiff nor Mr. Clemente saw

anyone sweep the floor. (Pl. Dep. 72; Clemente Dep. 41.)

When asked about what he saw on the floor, Plaintiff testified as follows:

Q: Was there something on the floor?
A: I did not see.
Q: You never saw anything on the floor?
A: I did not see anything, and maybe after I could say that I slipped on something; but at
that time I did not see anything.
Q: So either before you say slipped or after you say slipped, did you see anything on the
floor?
A: Before falling I saw on the floor pieces of insulation. . .
. . . .
Q: Okay. So you actually saw some pieces of insulation on the floor in the aisle where
you picked out the insulation you put on your cart?
A: Yes, you know when you move around insulation material there's some small pieces
that get dropped on the floor, and I saw that on one side of the aisle.
. . . .
Q: But describe it for me. When you say pieces, what did it look like?
A: When you move the insulation material from one side to the other place, you leave on

---

[3] The insulation in Plaintiff's cart was not wrapped in plastic. (Pl. Dep. 97; Clemente
Dep. 56.)

the floor small pieces.

Q: How large are the pieces?

A: I don't know. There were pieces, pieces on the floor. . . .

. . . .

Q: Okay. And so what color material did you see on the floor?

A: I don't know the color. When that is spread out it losses [sic] the color. We're not talking about large pieces. We're talking about dust from insulation.

. . . .

Q: So what you - Strike that. Did you see what you believe to be insulation dust on the floor in the aisle before you had your accident?

A: Yes, I did.

. . . .

Q: Okay. And the dust that you said you saw before your accident, did you see it before you pulled the sheets from the rack?

A: Yes, but listen, I'm trying to remember the events of that day. Dust from insulation at that time was not important, but now that there was an accident that becomes important.

Q: . . . . Are you claiming in this case that you slipped on insulation dust?

A: Yes.

Q:   Okay. And are you saying that you saw this insulation dust on the floor in the aisle before your accident happened?

A: Yes, of course.


. . . .


Q: . . . . When you went down on your buttocks after you fell, did you see insulation dust on the floor where you were?

A: I don't remember.

Q: You can't say whether or not there was any insulation dust on the floor where you were pulling the cart at the time that you went down, correct?

A: I'm not sure of anything. What I know is I slipped and fell there.

Q: All you know is you slipped. You have no idea how it is you slipped, correct?

A: What I know is I fell, and if it wasn't because of the accident, none of that, dust on the floor would have been relevant.

Q: You don't know how you slipped, correct?

Attorney: Form.

A: No, it is very difficult.

(Pl. Dep. 72-76, 83.)[4]

When asked if he saw any dust on the floor, Mr. Clemente stated that the floor was a light

---

[4] Plaintiff's answers to interrogatories state that he slipped on construction dust. (Pl. Answer to Interrog. ¶ 8, DE 58.)

grey, which made it difficult to see anything, including dust.  He did state that, despite wearing

rubber soled shoes, his feet moved easily across the floor and "[y]ou can tell that there's like a

film of dust over it." (Clemente Dep. 42-44, 57.)  At the time of the accident, Plaintiff was

wearing tennis shoes with a rubber sole. (Pl. Dep. 97.)   The floor at Home Depot is concrete.  It

is shiny and there is a sheen, but there is no coating on the floor.[5] (Glaid Dep. 15-16.)

Defendant moves for summary judgment on several grounds.  First, Defendant argues that

Plaintiff is speculating that he slipped on construction dust.  Second, Defendant claims that

Plaintiff's theory of the case requires an impermissible stacking of inferences.  Lastly, Defendant

states that there is no evidence to establish that Home Depot created the condition on the floor or

had actual or constructive notice of the condition.

## II.  Summary Judgment Standard

The Court may grant summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant  is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  The stringent burden of establishing the absence of a genuine issue of material

fact lies with the moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The Court

should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved

against the moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for

its motion, and identifying those portions of [the record] which it believes demonstrate the

---

[5] Defendant objects to the consideration of Plaintiff's laboratory report analyzing the
debris on Plaintiff's shoe because it allegedly was not disclosed by Plaintiff.  Plaintiff does not
respond to this claim.  In any event, it is not necessary to consider the report to reach the Court's
conclusion.

absence of a genuine issue of material fact." <u>Celotex Corp.</u>, 477 U.S. at 323.  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  <u>Id.</u> at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Electronic Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. <u>Anderson</u>, 477 U.S. at 257.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." <u>Anderson</u>, 477 U.S. 242, 249-50.

<u>III. Discussion</u>[6]

To sustain a cause of action for negligence, the burden of proof is on the plaintiff to establish that: (1) the defendant owed a duty of reasonable care to maintain the premises in a

---

[6]  In a diversity case, the Court applies Florida substantive law. <u>See</u> <u>Pendergast v. Sprint Nextel Corp.</u>, 592 F.3d 1119, 1132–33 (11th Cir. 2010); <u>Royal Ins. Co. of America v. Whitaker Contracting Corp.</u>, 242 F.3d 1035, 1040 (11th Cir. 2001).

reasonably safe condition; (2) the defendant breached that duty and (3) the defendant's breach was the proximate cause of the plaintiff's injuries and resulting damages.  Rupp v. Bryant, 417 So.2d 658, 668 n. 27 (Fla.1982);  Lake Parker Mall, Inc. v. Carson, 327 So. 2d 121, 123 (Fla. Dist. Ct. App. 1976).  Defendant claims that summary judgment should be granted in its favor because Plaintiff is merely speculating that the cause of his fall was dust on the floor of Home Depot.  In making this argument, Defendant relies upon Mount Sinai Med. Ctr. of Greater Miami, Inc. v.  Gonzalez, 98 So. 3d 1198 (Fla. Dist. Ct. App. 2012).

In Mount Sinai, the plaintiff sued a hospital for the wrongful death of her husband, claiming that, as her husband descended the steps at the hospital's bus stop, he fell and broke his hip which led to his death.  Id. at 1200.  The court held that because the plaintiff did not present "evidence that her husband even fell on or down the steps -let alone that he did so because of their defective condition - rather than on the sidewalk adjacent to the bus step," the plaintiff failed to show that the hospital's negligence was the cause of the accident. Id.  In reversing the jury verdict, the court noted that the bus driver testified that when the plaintiff's husband fell he was on the sidewalk.  Id. at 1201.  Furthermore, when the plaintiff was asked about her husband's fall, she testified that she did not see him fall, but she "imagin[ed] that he did not see the step and slipped on it."  Id.  The court found that the plaintiff's testimony was nothing more than conjecture. Id. at 1202.

In analogizing to the instant case, Defendant points to deposition testimony where Plaintiff states that he fell because his knees gave out when he was pushing the cart, that he did not use the word slipped or mention dust on the floor when talking to Home Depot, medical personnel or Mr. Clemente, that neither Home Depot personnel nor Mr. Clemente testified they

saw dust on the floor and that Plaintiff only assumed after the accident that the dust caused him to fall.  (Mot. at 11-12.)

At the same time, Plaintiff points to record evidence that he testified that there was insulation dust on the floor of Home Depot, that Mr. Clemente explained that "there's like a film of dust" on the floor, and that upon arrival on the accident scene, the Home Depot manager ordered his employees to sweep the floor immediately.

The Court finds, based on the record evidence highlighted by Plaintiff, there is a genuine issue of material fact as to whether there was dust on the floor where Plaintiff fell.  Unlike in Mount Sinai, where there was no testimony to indicate what caused the plaintiff's injuries aside from the plaintiff's conjecture, the testimony of Plaintiff and Mr. Clemente raises a question of fact regarding the presence of dust on the floor.  Thus, Plaintiff's case does not rely solely on speculation.[7]

Likewise, the same record evidence may be relied upon to dispute Defendant's characterization of Plaintiff's theory of the case as dependent upon a stacking of inferences.  By

---

[7] In Defendant's reply memorandum, Defendant states that Plaintiff has misstated the facts and Plaintiff did not see anything on the floor in the area of his fall.  (Reply at 5.)  The Court notes the following deposition testimony from Plaintiff:

> Q: So what you - Strike that. Did you see what you believe to be insulation dust on the floor in the aisle before you had your accident?
> A: Yes, I did.
> . . . .
>
> Q:   Okay. And are you saying that you saw this insulation dust on the floor in the aisle before your accident happened?
> A: Yes, of course.

(Pl. Dep. 74-76.)

way of example, while it is true that a fact finder could conclude, based on Plaintiff's testimony, that Plaintiff fell because his knees gave out, there is record evidence that would allow a fact finder to conclude that he fell because of dust on the floor.[8]  Therefore, the Court rejects Defendant's argument that Plaintiff's theory of the case is impermissibly dependent on the stacking of inferences. Instead, the Court finds that it is necessary for a fact finder to parse through this conflicting evidence to decide the issue of causation.

Lastly, the Court addresses Defendant's assertion that it is entitled to summary judgment because there is no evidence to establish that Home Depot created the condition on the floor or had actual or constructive notice of the condition.  Controlling in this case is Florida Statutes § 768.0755.[9]  This statute provides that a person who slips and falls on a transitory foreign substance in a business establishment "must prove that the business establishment has actual or

---

[8] The other examples provided by Defendant (Mot. at 14)  have equally compelling record support for Plaintiff's version of events.

[9]     Florida Statute § 768.0755 provides:

(1) If a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it. Constructive knowledge may be proven by circumstantial evidence showing that:

(a) The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or

(b) The condition occurred with regularity and was therefore foreseeable.

(2) This section does not affect any common-law duty of care owed by a person or entity in possession or control of a business premises.

Fla. Stat. § 768.0755.

constructive knowledge of the dangerous condition and should have taken action to remedy it." Fla. Stat. § 768.0755(1).

Defendant relies heavily on Feinman v. Target Corp., No. 11–62480–CIV, 2012 WL 6061745 (S.D. Fla. Dec. 6, 2012).  There, neither the plaintiff, nor her husband, had any idea what caused her to fall, only that she felt "something" under her shoe.  Id. at * 4.  There was no evidence as to the condition of the floor or the cause of her fall.  Moreover, there was evidence that Defendant's employees inspected the area for the presence of a transitory foreign substance and all inspections were negative.  Id. at * 5.

The instant case, however, differs from Feinman.  Unlike Feinman, where the plaintiff could not identify what caused her to fall, there is evidence in this record from which the trier of fact could conclude that Plaintiff fell due to dust on the floor from the unwrapped insulation.  Id. at * 4.  Additionally, the facts in Feinman showed that a store employee responsible for the area where the plaintiff fell constantly monitored the floor for hazards and did not see anything on the floor.  Id. at * 3.  In contrast, Plaintiff is relying on record evidence that Defendant's employees only sweep the floor when they see something, and the lack of record evidence that Defendant's employees monitor the floor for debris. Moreover, there is evidence that after Plaintiff's fall, the store manager told employees to sweep the area where he fell, suggesting something was on the floor that needed to be removed.

Nor does the Court find persuasive Defendant's reliance on Miller v. Big C Trading, Inc., 641 So. 2d 911 (Fla. Dist. Ct. App. 1994).[10]  There, the court held that the presence of two store employees in proximity to where the plaintiff fell did not give rise to an inference that the

---

[10] For the same reasons, the Court rejects Defendant's reliance on Hamideh v. K-Mart Corp., 648 So. 2d 824 (Fla. Dist. Ct. App. 1995).

defendant was on constructive notice of the grape's presence on the floor.  Id. at 912.  Plaintiff is not relying on the presence of employees near the site of his fall. Rather, as previously indicated, Plaintiff is relying on record evidence that Defendant's employees only sweep the floor when they see something, and the lack of record evidence that Defendant's employee's monitor the floor for debris.  Plaintiff also relies upon record evidence that the insulation Plaintiff wanted to buy is left unwrapped thereby permitting dust from the insulation to accumulate on the floor.

In view of all the record evidence, or the absence of evidence, and the reasonable inferences that can be drawn therefrom, Plaintiff has demonstrated that genuine issues of material fact exist on the question of whether Defendant should have known that unwrapped insulation caused a hazard (insulation dust) to accumulate on the floor. See Delgado v. Laundromax, Inc., 65 So. 3d 1087, 1090 (Fla. Dist. Ct. App. 2011) (citing Schaap v. Publix Supermarkets, Inc., 579 So.2d 831, 834 (Fla. Dist. Ct. App. 1991)) (constructive notice may be inferred from either "the amount of time a substance has been on the floor" or the *"fact that the condition occurred with such frequency that the owner should have known of its existence."*) (emphasis added).  While the mere presence of dust is not enough to establish constructive notice, there is additional record evidence (e.g., the lack of inspections and the presence of unwrapped insulation) on which a fact finder could rely to conclude that Defendant had constructive notice.[11]  ___

---

[11] The Court does not find persuasive the remaining cases relied upon by Defendant. In Sammon v. Target Corp., No. 8:11–cv–1258–T–30EAJ, 2012 WL 3984728 (M.D. Fla. Sept. 11, 2012), the court found there was no actual or constructive notice when the defendant's employees were trained to continually inspect premises and there was no evidence that any employee failed to comply with its policy.  Here, there was no evidence of a policy.  Moreover, unlike  Peer v. Home Depot U.S.A., Inc., No. 2:11-cv-14356-KMM, 2012 WL 1453579 (S.D. Fla. Apr. 26, 2012), Defendant did not submit deposition testimony stating that it had policies to prevent slip and falls, and there were no similar incident in the area where Plaintiff fell in the past ten years.  In Broz v. Winn-Dixie Stores, Inc., 546 So. 2d 83, 83 (Fla. Dist. Ct. App. 1989), in affirming the trial court, the appellate court relied on evidence that the floor was routinely

_____For the foregoing reasons, the Court finds that genuine issues of material fact preclude the entry of summary judgment for Defendant.

IV.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (DE 44) is **DENIED** and Plaintiff's Motion for Oral Argument (DE 53) is **DENIED.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 2nd day of April, 2013.

_____

KENNETH A. MARRA
United States District Judge

_____

inspected by the store manager and approximately 30 employees were "constantly on alert as to debris on the floor."